# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re: Chapter 11
Case No. 25-72946-LAS

KAHN PROPERTY OWNER, LLC,

Debtor.
---------------------------------------------------------X

# DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

**LAMONICA HERBST & MANISCALCO, LLP**
Attorneys for Kahn Property Owner, LLC
Chapter 11 Debtor

By: Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.

3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500

**TABLE OF CONTENTS**


| | | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| ARTICLE II | CLASSIFICATION OF CLAIMS AND INTERESTS | 7 |
| ARTICLE III | TREATMENT OF CLASSES | 9 |
| ARTICLE IV | IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS UNDER THE PLAN | 12 |
| ARTICLE V | CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE | 12 |
| ARTICLE VI | EXECUTION AND IMPLEMENTATION OF PLAN | 12 |
| ARTICLE VII | AMENDMENTS AND MODIFICATIONS | 15 |
| ARTICLE VIII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 16 |
| ARTICLE IX | EFFECT OF CONFIRMATION; INJUNCTION AND EXCULPATION | 17 |
| ARTICLE X | CLAIMS MATTERS | 19 |
| ARTICLE XI | DUTIES AND RIGHTS OF DISTRIBUTING AGENT | 20 |
| ARTICLE XII | UNCLAIMED DISTRIBUTIONS | 21 |
| ARTICLE XIII | RETENTION OF JURISDICTION | 22 |
| ARTICLE XIV | EVENTS OF DEFAULT | 23 |
| ARTICLE XV | GENERAL PROVISIONS | 24 |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re: Chapter 11
Case No. 25-72946-LAS

KAHN PROPERTY OWNER, LLC,

Debtor.
--------------------------------------------------------X

**DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

The following third amended Chapter 11 plan of reorganization dated August 12, 2026 ("Plan") is hereby proposed by Kahn Property Owner, LLC, the Chapter 11 debtor and debtor in possession ("Debtor"), and filed by its attorneys, LaMonica Herbst & Maniscalco, LLP, pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

## ARTICLE I

## DEFINITIONS

For purposes of this Plan, the following terms have the meanings set forth below with the meanings to be equally applicable to the singular and plural forms of each term defined, unless a different meaning is clearly defined herein. Terms used in this Plan that are defined in the Bankruptcy Code will have the meaning assigned them therein.

1.01 "Administrative Expense" means any cost or expense of the administration of the Debtor's Chapter 11 case entitled to priority in payment in accordance with the provisions of Sections 503(b) and 507(a) of the Bankruptcy Code, or as may be allowed by Final Order, including, without limitation: (a) the actual and necessary costs and expenses of preserving the Debtor's estate (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Effective Date); (b) all allowances of compensation for legal or other services or reimbursement of costs and expenses under applicable sections of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court; and (c) any indebtedness or obligations

incurred or assumed by the Debtor during the pendency of this Chapter 11 case. To the extent permitted under Section 506(b) of the Bankruptcy Code, an Administrative Expense includes unpaid interest and any reasonable unpaid fees, costs or charges provided for under the agreements under which that Administrative Expense arose.

1.02 "Allowed Administrative Expense" means any Administrative Expense, or portion thereof, which has been allowed by Final Order of the Bankruptcy Court.

1.03 "Allowed Claim" means a Claim, other than an Administrative Expense that is: (a) listed in the Debtor's schedules, including any amendments thereto, filed in this Chapter 11 case as of the Effective Date and not listed as "disputed," "contingent," "unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a proof of Claim timely and properly filed in this Chapter 11 case on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given and as to which no objection to the allowance thereof is filed; (c) determined to be allowed by Final Order of the Bankruptcy Court, or (d) an amount that the Debtor is made aware of that it is obligated to pay. To the extent permitted under Section 506(b) of the Bankruptcy Code, an Allowed Claim shall include unpaid interest on such Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose.

1.04 "Allowed Priority Claim" means all or that portion of an Allowed Claim entitled to priority under Sections 507(a)(3), (4) and (6) of the Bankruptcy Code. Except as may be allowed by the Bankruptcy Court in the case of an Allowed Priority Tax Claim under Section 507(a)(8) of the Bankruptcy Code, any interest on such claim which accrued after the Petition Date, shall be part of the Allowed Priority Claim.

1.05 "Allowed Priority Tax Claim" means any Allowed Claim, or portion thereof, except an Administrative Expense, that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.06 "Allowed Secured Claim" means that portion of an Allowed Claim that is secured by a valid and perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtor as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, together with such interest (including interest accrued on or after the Petition Date) fees, costs, and charges as may be allowed by the Bankruptcy Court under Section 506(b) of the Bankruptcy Code.

1.07 "Allowed Unsecured Claim" means any Allowed Claim, or portion thereof, which is not an Allowed Administrative Expense Claim, an Allowed Secured Claim, an Allowed Priority Tax Claim or an Allowed Priority Claim.

1.08 "Bankruptcy Code" means Title 11 of the United States Code, and any amendments thereof applicable to this Chapter 11 case and in effect on the Petition Date.

1.09 "Bankruptcy Court" means the United States District Court for the Eastern District of New York and, to the extent of any reference made by such Court pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the Eastern District of New York or any other Court having lawful jurisdiction over this Chapter 11 case.

1.10 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto including any local bankruptcy rules adopted by the Bankruptcy Court.

1.11 "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.12 "Claim" means a claim as defined in Section 101(5) of the Bankruptcy Code whether or not asserted against the Debtor.

1.13 "Class" means any class into which Claims are classified pursuant to Article II of the Plan on the Effective Date.

1.14 "Confirmation Account" means the bank account to be established by the Distributing Agent to hold all funds necessary to make distributions under the Plan on the Effective Date, which bank account shall be a banking institution that is an authorized depository in the Eastern District of New York.

1.15 "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.16 "Confirmation Order" means the order issued by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.17 "Debtor" means Kahn Property Owner, LLC.

1.18 "Disclosure Statement" means the Debtor's disclosure statement approved by the Court pursuant to Section 1125 of the Bankruptcy Code.

1.19 "Disputed Claim" means a Claim (other than an Allowed Claim), proof of which has been filed with the Bankruptcy Court and an objection to the allowance of which has been filed with the Bankruptcy Court and has been or is interposed prior to the final date of the filing of such objection set forth in the Plan, the Confirmation Order or such other applicable period of limitations fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, and as to which such dispute or objection has not been determined by a Final Order; and pursuant to a judgment or order of a court of competent jurisdiction which judgment or order has been stayed or as to which judgment or order (or any revisions, modifications or amendments thereof) the

Debtor's time to appeal or seek review or rehearing has not expired by reason of statute or otherwise; provided, however that (a) with respect to any Disputed Claim for which a proof of claim has not been filed with, or fixed by, the Bankruptcy Court in the amount of a sum certain, the amount of such disputed claim, shall, for purposes of the Plan, be fixed or liquidated by the Bankruptcy Court prior to the Confirmation Date under Section 502 of the Bankruptcy Code or may be fixed by an agreement in writing between the attorneys for the Debtor and the holder thereof, or such disputed claims may be fixed or determined by a final order entered after the Confirmation Date, and (b) the amount of any Disputed Claim may be such lesser amount of the amount in which such Disputed Claim was filed, as the Bankruptcy Court may order, or as the Debtor and the holder of such a Disputed Claim may agree upon in writing, and, provided further, that in no event shall any holder of a Disputed Claim if and when such Disputed Claim becomes an Allowed Claim, be entitled to receive from the Debtor an amount greater than the amount of such Disputed Claim so estimated or determined by the Bankruptcy Court or agreed upon by the Debtor and the holder thereof.

1.20 "Distributing Agent" means the Debtor, through the assistance of counsel.

1.21 "Distribution" means the payments made by the Distributing Agent under the Plan to holders of Allowed Claims and Allowed Administrative Expense Claims.

1.22 "Effective Date" means upon the closing of the sale of the Property, after each of the conditions set forth in Article V of this Plan are either satisfied or waived.

1.23 "Estate" means the estate of the Debtor created under Section 541 of the Bankruptcy Code.

1.24 "Exculpated Parties" means the Debtor and professionals of the Debtor employed pursuant to Order of the Bankruptcy Court.

1.25 "Executory Contract" means any of the contracts to which the Debtor is a party and was a party on the Petition Date and which are executory within the meaning of Section 365 of the Bankruptcy Code.

1.26 "Fee Application" means any application of professionals under applicable provisions of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

1.27 "Fee Claim" means a Claim under an applicable provision of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court, for allowance of compensation and reimbursement of expenses to a professional in this Chapter 11 case.

1.28 "Final Order" means an order, judgment, decree, stipulation, or other agreement which is "so ordered" by the Bankruptcy Court, 14 days after the entry of which on the docket of the Bankruptcy Court, in these proceedings has not been reversed, stayed, modified or amended.

1.29 "Member Interests" means the membership interests in the Debtor each held by Gary Melius and his family members.

1.30 "Person" means any individual, corporation, partnership, association, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, interest holder, holder of a Claim, current or former employee, officer or director of the Debtor, or any other entity.

1.31 "Petition Date" means July 31, 2025, the date the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.32 "Plan" means this plan of reorganization and any amendments permitted in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.33 "Priority Tax Claims" mean those Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.34 "Professional" means the attorneys and other professionals retained by the Debtor pursuant to Final Order of the Bankruptcy Court.

1.35 "Property" means 135 West Gate Drive, Huntington, New York 11743.

1.36 "Unclaimed Property" means any cash (together with any interest earned thereon) unclaimed on the 180th day following the Effective Date and subsequent distributions. Unclaimed Property includes: (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) checks (and the funds represented thereby) which have not been paid; and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such check.

1.37 "Unexpired Lease" mean the nonresidential lease ("Lease") with the Debtor as landlord and the various tenants ("Tenants") at and for the Property: Oheka Management Corp. and Oheka Catering, Inc., for a period of twenty (20) years ending on July 27, 2027, with available options.

1.38 "Unsecured Creditor" means the holder of an Allowed Unsecured Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 General Classification Rule

A Claim that is properly included in more than one Class is in a Class to the extent it qualifies within the description of such Class and is in a different Class to the extent it qualifies within the description of such different Class.

2.02 Acceptance of Classification

Any holder of a Claim who fails to object, in writing, to the classification of Claims provided in the Plan, and who has not filed such objection with the Bankruptcy Court and served such objection upon counsel for the Debtor, at least twenty (20) days prior to the hearing on confirmation of the Plan shall be deemed to have accepted such classification and shall be bound thereby.

2.03 Unclassified Claims

2.03.1 Administrative Expense Claims: This Class consists of all Allowed Administrative Expenses Claims, including those of the Debtor's counsel or other retained professionals, as authorized by and subject to the approval of the Bankruptcy Court.

2.03.2 United States Trustee Quarterly Fees: All statutory quarterly fees and applicable interest due to the Office of the United States Trustee that come due up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code.

2.03.3 Priority Tax Claims: Claims of governmental units, if any, that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code. No Priority Tax Claims have been filed.

2.04 Classification of Claims

For purposes of the Plan, except for all Unclassified Claims as set forth above, all Allowed Claims shall be placed in the following Classes, which Classes shall be mutually exclusive.

2.04.1 Class 1 Claim – Allowed Secured Claim. This class consists of the Allowed secured claim against the Property of the note buyer known as 135 West Gate Drive LLC ("135 WG").

2.04.2 Class 2 Claims – Allowed General Unsecured Claims. This class consists of the Allowed General Unsecured Claims.

2.04.3 Class 3 Interests – This class consists of the Allowed Member Interests of the Debtor.

**ARTICLE III**

**TREATMENT OF CLASSES**

3.01 Allowed Administrative Expense Claims

Administrative Expense Claims are unimpaired. Upon or after the Effective Date of the Plan, each holder of an Allowed Administrative Expense Claim shall be paid in full, or on such other date and upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Debtor. Debtor's counsel and any retained professional shall be paid in connection with an application to and Order of the Bankruptcy Court. Each holder of an Allowed Administrative Expense Claim shall be paid from available funds, which may include, to the extent necessary, proceeds (a) in connection with a global resolution with 135 WG, (b) from the private sale of the Property (including the Development Rights[1]) or (c) from the auction sale of the Property. Holders of Administrative Expense Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

3.02 United States Trustee Claims

[1] The defined term Development Rights ("Development Rights") includes the land consisting of the subject 5.1 acre parcel. On or about March 20, 2023, the Debtor obtained authorization and approval to develop a certain residences project thereon. The sale thereof is subject to the subdivision, approvals and granting of the easement.

The United States Trustee claims are unimpaired. The Debtor shall pay all statutory fees and applicable interest due to the Office of the United States Trustee that come due up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code.

3.03 Priority Tax Claims

No such Priority Tax Claims have been filed.

3.04 Class 1 Claim – Allowed Secured Claim of 135 WG

Upon the Effective Date, the holder of the Allowed Class 1 Claim shall be paid in full on the Effective Date, together with interest along with expenses pursuant to applicable nonbankruptcy and bankruptcy law[2]: (a) in connection with a global resolution as agreed between the Debtor and 135 WG subject to approval Order of the Court; (b) from the proceeds of the private sale of the Property (including the Development Rights as well as the Opco Entities' (as defined herein) assets), or (c) from the auction sale of the Property (including the Development Rights as well as the Opco Entities' assets).

In connection with the above potential auction sale of the Property, proposed terms and conditions[3] of such sale shall be incorporated into a separate sale motion filed by the Debtor, which shall include 135 WG's right to credit bid the Allowed amount of its claim in this case at such auction sale.

[2] Subject to any motion brought by the Debtor in connection with proof of claim number 9 of 135 WG filed in this case, the Debtor will pay the Allowed Class 1 Claim of 135 WG in full with applicable interest and expensesas allowed by the Court.

[3] The Debtor intends to attempt to achieve consensual auction sale terms and conditions with 135 WG, with each the Debtor and 135 WG reserving all rights with respect thereto.

To the extent that the Allowed Claim of 135 WG will be paid in full with interest and expenses, 135 WG has advised the Debtor that it intends to vote in favor of the Plan.

Accordingly, the Class 1 Claim is impaired, and therefore, such claimant is entitled to vote to accept or reject the Plan.

3.05 Class 2 Claims – Allowed General Unsecured Claims

Upon the Effective Date, each holder of an Allowed Class 2 Claim shall receive payment in full, on account of such Allowed Claim, (a) in accordance with a global resolution with the Debtor and 135 WG pursuant to Court approval order, (b) from the proceeds of the private sale of the Property, its Development Rights and the Opco Entities' assets, or (c) from the auction sale of the Property, its Development Rights and the Opco Entities assets, upon and after payment of the Allowed Class 1 Claim as set forth above, and the Court approved professional and administrative claims. Accordingly, Class 2 Claims are impaired, and therefore, holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3.06 Class 3 Interests – Allowed Member Interests

Class 3 Interests consist of the member interests of the Debtor held by Gary Melius and related family members as set forth in the corporate structure chart. Upon the Effective Date and payment of the above Class 1 and Class 2 Claims and administrative claims, the holders of the Class 3 Interests shall receive the balance of the sale proceeds on account of such interests. Class 3 Interests are impaired, and therefore the holders of Class 3 Interests are entitled to vote to accept or reject the Plan.

## ARTICLE IV

## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS UNDER THE PLAN

4.01 Unimpaired Classes

Administrative Expense Claims and United States Trustee Claims are unimpaired under the Plan and are deemed to have accepted the Plan.

4.02 Impaired Classes – Classes 1, 2 and 3.

## ARTICLE V

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

5.01 Conditions Precedent.

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1. The Bankruptcy Court shall have entered the Confirmation Order, which Confirmation Order shall confirm this Plan.

2. There shall be no stay or injunction in effect with respect to the Confirmation Order.

## ARTICLE VI

## EXECUTION AND IMPLEMENTATION OF PLAN

6.01 Timing of the Plan

Consistent with the requirements set forth in Article V, the implementation of the Plan occurs on the Effective Date, provided, however, that the Debtor, in its sole discretion, may waive the requirement that any orders in this case be a Final Order.

6.02 Source of Funding[4]

The Debtor will implement this Plan and pay creditors hereunder by one of the following:

(a) a global resolution with 135 WG, subject to Court approval[5];

(b) the Debtor will effectuate a private sale of the Property (including the Development Rights) together with the sale of the Opco Entities' assets, and pay all classes of creditors in full, all administrative expenses in full, and the surplus to the member interests. Presently, the Debtor has an offer to purchase the Property from a third-party purchaser in excess of the amount necessary to pay 135 WG (approximately $60 million), all administrative professionals and the allowed unsecured creditors, which transaction is not subject to any financing contingency. The Opco Entities[6] will contribute to the Plan and the sale all assets, operations and contracts to such purchaser.[7] The Debtor and such third-party have entered an exclusive agreement to enter into a purchase and sale agreement for the Property (and Development Rights and the Opco Entities' assets) by on or before August 21, 2026, unless extended by written agreement of the parties to the purchase and sale agreement and further Order of the Court. The closing (the Effective Date of the Plan) will occur within 15 days of entry of the Order confirming the Plan, unless extended by written agreement of the parties to the purchase and sale agreement and further Order of the

---

[4] The terms "sale" and/or "sell" used herein mean that such asset(s) shall be sold "as is," "where is," "with all faults," without representations or warranties, unless expressly stated otherwise, with liens to attach to the sale proceeds, to the extent of the value of the collateral, in accordance with the lien priorities under the Bankruptcy Code and applicable state law.

[5] The Debtor shall discontinue any such unconsummated potential global resolution with 135 WG once a purchase and sale agreement is entered in accordance with Plan implementation option (b).

[6] The "Opco Entities" mean Oheka Catering, Inc., Oheka Catering I, LLC, Oheka Management LLC (collectively operate the wedding, corporate and related hospitality events).

[7] A critical benefit hereunder is the purchaser will assume all obligations in connection with all currently scheduled weddings (and events) in the ordinary course of business.

Court. The Debtor has already engaged in extensive meetings and negotiations with the prospective purchaser and its counsel. The prospective purchaser has demonstrated substantial financial wherewithal, requiring no financing contingency, and is a highly sophisticated real estate and hospitality conglomerate with significant development projects throughout the world[8]; or

(c) in the event the conditions and time deadlines described in subparagraph (b) above have not been satisfied, the Debtor will sell by public auction sale the entire Property, the Development Rights and the Opco Entities, pursuant to certain auction sale terms, conditions and procedures, with such auction sale terms and conditions to be submitted to the Court by separate motion[9] for approval by August 22, 2026, unless extended as above. The auction terms and conditions shall include the right of 135 WG to credit bid the Allowed amount of its claim.

6.03 No Stamp or Similar Transfer Taxes

Pursuant to Section 1146 of the Bankruptcy Code, in the event of a sale and transfer of the Property, any distribution of funds constituting the net proceeds of the sale shall not be subject to any tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.

6.04 Bar Date for Fee Claims

Each Person retained or requesting compensation in this Chapter 11 Case, pursuant to Bankruptcy Code Sections 330, 331, and/or 503(b), must file with the Court an application for

---

[8] The Debtor will file such documents as are necessary and appropriate to the sale motion concerning evidence of the financial wherewithal of the prospective purchaser to consummate the sale transaction, including the types of financial documents that were reviewed by the Debtor demonstrating the same. To the extent necessary, the Debtor will also provide such financial documents necessary and appropriate to the Court and the United States Trustee for in camera inspection and 135 WG reserves its right to request the right to review the same and object to any *in camera* review.

[9] As indicated above, the Debtor intends to achieve consensual proposed auction sale terms and conditions with 135 WG, with each the Debtor and 135 WG reserving all rights with respect thereto.

allowance of any Fee Claims within sixty (60) days after the Effective Date. All such Fee Claims for which an application is not timely filed shall be forever barred. Objections, if any, to each such application shall be filed in accordance with the Bankruptcy Rules. The Court shall determine all such Fee Claims.

6.05 Bar Date for Other Administrative Claims

Unless this Plan or the Court fixes a different date, with the exception of Fee Claims, all Administrative Claims must be filed no later than thirty (30) days after the Effective Date. All such Claims not timely filed shall be forever barred. The Debtor may object to the allowance of any such Claim filed before, on, or after the Effective Date.

## ARTICLE VII

## AMENDMENTS AND MODIFICATIONS

7.01 Amendment of Plan

The Debtor reserves the right to amend and modify the Plan prior to the Confirmation Date in any manner necessary to obtain confirmation of the Plan, to the extent permitted by the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Such amendments may be made at, or prior to, the hearing on confirmation of the Plan without further notice to any party in interest, except an announcement in open court made on the record at the confirmation hearing. After the Confirmation Date, the Debtor may, upon an order of Bankruptcy Court in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defects, or omissions or reconcile any inconsistency in this Plan in a manner necessary to carry out the purposes and intent of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01 Assumption/Rejection of Executory Contracts and Unexpired Leases

Except as expressly set forth herein, to the extent the Debtor was a party or lessee to any executory contract and/or unexpired lease, respectively, as of the Petition Date, the Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease: (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, or (c) is sought to be assumed by this Plan (or other motion) on or before the Confirmation Date. Except as set forth below, the Confirmation Order shall constitute an order of the Court under Section 365 of the Bankruptcy Code approving the contract and lease rejections described herein, as of the Effective Date.

Notwithstanding any language to the contrary, the Debtor seeks, by this Plan, to assume its Lease as Landlord for the Property.[10]

No cure amounts exist with respect to such Unexpired Lease as the Debtor is the landlord of such tenant(s) and receives an accrual of rent or is paid rent from such tenant(s) (and does not owe any funds to such tenant(s) to be cured). Exclusively with respect to such Unexpired Lease, the Confirmation Order (or other Court order if applicable) shall constitute an order of the Court under Section 365 of the Bankruptcy Code approving such Unexpired Lease assumption.

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor or the assignee of the Debtor assuming such contract or lease, by cure, or by such other treatment as to which the Debtor and such non-Debtor

---

[10] The Lease is for the operation of the catering facility (e.g. for weddings) and the restaurant. The Debtor receives rent and/or accrued rent from the tenants.

counterparty to the executory contract or unexpired lease shall have agreed in writing. If there is a dispute regarding the nature or amount of any cure, the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or any other matter pertaining to assumption, the Debtor shall cure the same within thirty (30) days following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment, as the case may be.

If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely filed proof of claim or a proof of claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtor, unless a proof of claim is filed with the Clerk of the Court and served upon counsel for the Debtor within thirty (30) days of entry of the Confirmation Order.

## ARTICLE IX

## EFFECT OF CONFIRMATION; INJUNCTION AND EXCULPATION

9.01 On the Effective Date, the terms of this Plan bind all holders of all Claims against the Debtor, whether or not such holders accept this Plan.

9.02 Injunction

Effective on the Confirmation Date, all creditors who have held, hold, or may hold Claims against the Debtor or its assets are enjoined from taking any of the following actions against or affecting the Debtor or the assets of the Debtor with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (a) commencing, conducting or continuing in any manner, directly or

indirectly, any suit, action or other proceeding of any kind against the Debtor, its assets or property; (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor, its assets or property; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, its assets or property; (d) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtor, its assets or property; and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

9.03 Exculpation

The Exculpated Parties who provided services to the Debtor's estate during this Chapter 11 case will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date through the Effective Date of the Plan in connection with or related to this estate, including but not limited to (i) the commencement and administration of the Chapter 11 case, (ii) the operation of the Debtor during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing or confirming, the Plan (including soliciting acceptances or rejections thereof); or (iv) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of the Chapter 11 case or in connection with the Plan.

Nothing in this section shall (i) be construed as a release of such person's fraud, gross negligence, or willful misconduct with respect to the matters set forth in this section, or (ii) limit the liability of the Debtor's professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

## ARTICLE X

## CLAIMS MATTERS

10.01 In the event that objections to Claims are filed by the Debtor, the Debtor will determine the amount of cash to be reserved with respect to the contested or Disputed Claim in a sum not less than the amount required to pay the contested or Disputed Claim under the Plan on account of such Claim, if said Claim was proved and allowed, in full, (with interest, if applicable), and keep on deposit such funds in the Confirmation Account. Contested or Disputed Claims that are litigated to judgment, settled or withdrawn will be satisfied from the funds held for that purpose. Should the amount reserved by the Debtor on account of the Contested or Disputed Claim exceed the amount required to satisfy the Contested or Disputed Claim, any excess will be distributed in accordance with this Plan.

10.02 Objections to Claims to the extent not already commenced by the Debtor, must be filed and served no later than 90 days subsequent to the Effective Date or within such other extended time period as may be requested by the Debtor and fixed by the Court (with such application or motion being filed prior to the expiration of the applicable period); provided however that the Debtor will have 90 days from the filing of such any such Claim to file an objection.

10.03 Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim that has not become an Allowed Claim, except that the plan administrator may distribute consideration attributable to any undisputed portion of a Claim and withhold the remainder.

10.04 Distribution Record Date

Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by the Debtor or Confirmed Debtor, as applicable, the transferees of Claims that are

transferred pursuant to Bankruptcy Rule 3001 on or prior to February 1, 2026 ("Distribution Record Date") will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Confirmed Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, the Confirmed Debtor shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Confirmed Debtor as of the Distribution Record Date except as expressly set forth in this Plan.

## ARTICLE XI

## DUTIES AND RIGHTS OF DISTRIBUTING AGENT

11.01 Nomination of the Debtor to make Distributions

The Debtor, with the assistance of counsel, shall be the Distributing Agent and plan administrator under the Plan and shall be responsible for making all distributions under the Plan. The Distributing Agent shall be nominated as such as part of the confirmation of the Plan and such nomination is effective upon the Confirmation Date. The Distributing Agent will be responsible for implementing and effectuating all provisions of the Plan in accordance with its terms.

11.02 Duties and Rights of Distributing Agent

Pursuant to the Plan, the Distributing Agent will pay all Allowed Administrative Expenses, allowed pursuant to an Order of the Court, will distribute the monies payable to the

holders of Allowed Claims in accordance with the Plan, or upon such other terms as may be agreed upon between the Debtor and such holder of an Allowed Claim.

11.03 Post Confirmation Compensation of Debtor's Professionals

After confirmation, to the extent the Professionals provide services to the Debtor in connection with this Plan, they shall provide invoices to the Debtor for the fees incurred and any disbursements expended on behalf of the Debtor under the confirmed Plan on a monthly basis. In the event that no objection to the invoice is asserted within ten (10) days of delivery, the Debtor will be vested with the right to pay the invoice to the Professional(s). In the event a dispute over the fees of the Professionals cannot be resolved consensually, the dispute will be resolved through an appropriate application to the Bankruptcy Court. The parties agree that the Bankruptcy Court retains jurisdiction to resolve any fee dispute, to the extent one arises.

## ARTICLE XII

## UNCLAIMED DISTRIBUTIONS

12.01 For a period of 180 days following the Effective Date, unclaimed property will be held by the Debtor in a depository in compliance with Section 345 of the Bankruptcy Code for the holders of Allowed Claims which have failed to claim such distribution. For a period of 180 days following the Effective Date, and for a period of 180 days following subsequent distributions, unclaimed property due to the holder of an Allowed Claim will be released by the Debtor and delivered to such holder upon presentation and proper proof by such holder of its entitlement thereto.

12.02 At the end of the 180 days following the Effective Date and subsequent distributions, all unclaimed distributions together with any interest thereon, will be distributed to the Confirmed Debtor to be further distributed in accordance with this Plan.

## ARTICLE XIII

## RETENTION OF JURISDICTION

13.01 The Bankruptcy Court will retain jurisdiction under Chapter 11 of the Bankruptcy Code and, for the purposes set forth in Section 1127(b) of the Bankruptcy Code, including, *inter alia*, the following:

a) to hear and determine all Claims and/or Administrative Expense Claims concerning the classification, allowance or disallowance of any Claim, if any;

b) to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Petition Date, if any;

c) to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, if any, and allowance of Claims resulting therefrom;

d) to hear and determine any settlement and/or compromise pursuant to Bankruptcy Rule 9019 concerning any of the matters herein;

e) to alter, modify and amend the Plan pursuant to Section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

f) to hear and adjudicate any litigations, claims of the Bankruptcy estate, applications and/or contested matters, including without limitation, any settlement or dispute thereof, or to enforce and/or implement the terms of any such settlement;

g) to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in Sections 1127(b) and 1142 of the Bankruptcy Code or as contained in Bankruptcy Rules 1019 and 3020(d);

h) to hear and determine all applications for compensation;

i) to hear and determine matters concerning local, state and federal taxes in accordance with sections 346, 505 and/or 1146 of the Bankruptcy Code;

j) to make such orders *ex parte* or upon application or motion, as are necessary or appropriate, including to hear and determine any controversies and/or disputes concerning the interpretation and/or implementation of the provisions of the Plan, and any applications or motions to approve the transactions contemplated by the Plan, including without limitation, all sale (including assignment) matters relating to the Plan, the Debtor's property and/or assets;

k) to enter a final order or decree concluding the Chapter 11 case or an order of substantial consummation; and

l) to determine other matters contained in the Confirmation Order or that is authorized under the provisions of the Bankruptcy Code.

## ARTICLE XIV

## EVENTS OF DEFAULT

14.01 The following events constitute defaults under the Plan:

a) the Debtor fails to perform or observe any of the transactions, covenants, representations or warranties contained in this Plan; and

b) the Debtor fails to make any payments provided for in the Plan.

14.02 Subject to Section 14.03 herein, the occurrence of any event of default entitles any creditor or party in interest to move this Bankruptcy Court, on notice to the Debtor, Debtor's counsel, and the Office of the United States Trustee, to declare the Plan terminated and of no further force and effect, and any deferred indebtedness under the Plan and accruals of interest on payments, if any, shall then become immediately due and payable. Failure or delay by any creditor or party in interest to give such notice or to make such motion to declare an event of default shall not constitute a waiver or release of any right of any creditor or party in interest to

move to declare a default by reason of such event or any other prior or subsequent event of default.

14.03 Upon written receipt from any creditor or parties in interest of a notice of default (as set forth in section 14.02), the Debtor will have thirty (30) days from receipt of such notice to cure such default and during such thirty (30) days, any creditor or party in interest will take no action to terminate this Plan. If such default is cured within the thirty (30) day period, then the Plan will continue in full force and effect. Notices pursuant to this section 14.03 must be sent to the Debtor by certified mail, return receipt requested to the following addresses: (a) LaMonica Herbst & Maniscalco, LLP, counsel for the Debtor, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793 Attn: Joseph S. Maniscalco, Esq., and (b) Kahn Property Owner, LLC, 135 West Gate Drive, Huntington, New York 11743, Attn: Gary Melius.

## ARTICLE XV

## GENERAL PROVISIONS

15.01 Headings

The headings used in the Plan are inserted for convenience or reference only and neither constitutes a portion of the Plan nor in any manner affects the provisions or interpretations of this Plan.

15.02 Section 1125(e) of the Bankruptcy Code

Confirmation of this Plan will constitute a finding that the Debtor (and any affiliate, agent, director, officer, employee, advisor, Professional, and attorney) have proposed and solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

15.03 Notices

Notices will be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan must be in writing and must be delivered personally or by registered or certified mail, return receipt requested, to:

Attorneys for the Debtor:

Joseph S. Maniscalco, Esq.
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Facsimile: (516) 826-0222

The Debtor:
Kahn Property Owner, LLC
135 West Gate Drive
Huntington, New York 11743
Attn: Gary Melius

15.04 Change of Address

The Debtor may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to the person to be charged with the knowledge of such change.

15.05 Rounding to the Nearest Dollar

Notwithstanding any provision to the contrary herein, payments requiring portions of a dollar will not made. Actual payments will be made by rounding such fractional obligation, up or down, to the nearest whole dollar.

15.06 Minimum Distributions

If a Distribution to be made to a given holder of an Allowed Claim would be $50.00 or less, notwithstanding any contrary provision of this Plan, no such Distribution will be made to

such holder. Any unclaimed or retained Distributions shall be disbursed in accordance with Article XII of this Plan.

15.07 Successors and Assigns

The rights and obligations of any entity named or referred to in the Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

15.08 Post Confirmation Reporting

The Debtor shall file post-confirmation operating reports with the Bankruptcy Court on a quarterly basis, within twenty (20) days after the conclusion of each post-confirmation calendar quarter, until the earlier of the entry of a final decree, conversion or dismissal of this case.

15.09 Post Confirmation Service List – Persons Entitled to Notice

From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Bankruptcy Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons unless such Persons file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be filed with the Bankruptcy Court and served upon the Persons listed in Section 15.03 of the Plan.

15.10 Notice of Entry of Confirmation Order

Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Bankruptcy Court, without attaching said order, is mailed to those Persons who had filed a notice of appearance and request for service of process in the Chapter 11 Case and to Persons appearing on the Post-Confirmation Date Service List.

15.11 Effectuating Documents and Further Transactions

The Debtor and its counsel shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan. All holders of Claims or Interests, including those receiving distributions under the Plan, shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

15.12 Cramdown

The Debtor reserves the right to request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code.

15.13 Dissolution

After the Effective Date, and in accordance with and to the extent expressly provided for in the Plan, the membership interests of the Debtor shall be deemed cancelled, and the Debtor is deemed dissolved for all purposes without the necessity for any other or further actions to be taken by the Debtor, or payments concerning such dissolution to be made in connection with the Plan. From and after the Effective Date, the post-confirmation Debtor shall not be required to file any document, or take any action, to withdraw its business operation from any state (or jurisdiction) where the Debtor previously conducted business operations.

15.14 No Interest

Except with respect to holders of Unimpaired Claims entitled to interest under applicable non-bankruptcy law or as otherwise expressly provided herein, no holder of an Allowed Claim, including, without limitation, holders of Allowed Unsecured Claims under Class 2 of this Plan,

shall receive interest on any distribution to which such holder is entitled hereunder, regardless of whether such distribution is made on the Effective Date or thereafter.

15.15 Withholding of Taxes

(a) The Debtor may withhold from any property to be distributed under this Plan any property which must be withheld for taxes payable by the entity entitled to such distribution to the extent required by applicable law. As a condition to making any distribution under this Plan, the Debtor may request that the holder of any Allowed Claim provide such holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b) Notwithstanding any other provision of the Plan, each entity receiving a distribution pursuant to the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

15.16 Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of

this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.17 Controlling Documents

(a) In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence, and (b) in the event and to the extent that any provision of this Plan or Confirmation Order is inconsistent, the Confirmation Order shall control.

15.18 No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

15.19 Entire Agreement.

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

15.20 Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

15.21 References

Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

Dated: August 12, 2026

**LaMonica Herbst & Maniscalco, LLP**
Attorneys for the Debtor

By: *s/ Joseph S. Maniscalco*
Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500

Dated: August 12, 2026

**Kahn Property Owner, LLC**
Chapter 11 Debtor

By: */s/ Gary Melius*
Kahn Associates, LLC by
Gary Melius, Member