# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAHN PROPERTY OWNER, LLC | : | Case No. 25-72946 |
| | : | |
| Debtor. | : | |

**TERMS AND CONDITIONS OF A PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY, DEVELOPMENT RIGHTS AND NON-DEBTOR ASSETS**

1. On July 31, 2025 ("Filing Date"), Kahn Property Owner, LLC ("Debtor") filed a voluntary petition [ECF No. 1] for reorganization pursuant to Chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court").

2. On September 1, 2026, the Debtor made an oral application in the Bankruptcy Court for approval of these bid procedures to, among other things, authorize and approve the Terms and Conditions ("Bid Procedures") for the proposed sale of: (i) the real property located at 135 West Gate Drive, Huntington, New York 11743, which is comprised of approximately 22 acres of land improved by the historic Oheka Castle & Resort building, including the Debtor's Development Rights (as defined below) (collectively, the "Real Property"); (ii) all right, title and interest in and to the assets owned by Oheka Catering, Inc, which entity owns Oheka Catering I, LLC and Oheka Management, LLC (collectively referred to as the "Non-Debtor Assets") (Oheka Catering I, LLC and Oheka Management, LLC are collectively identified as the "Oheka Operating Entities").

3. The Debtor shall sell the Real Property and the Non-Debtor Assets under a single sale process (both as more fully defined below but referred to herein collectively as the "Oheka Complex").

4. On September [___], 2026, the Bankruptcy Court entered the Order [ECF No. __] ("Bid Procedures Order") approving these Bid Procedures.

5. These Bid Procedures set forth the process for the marketing and sale of the Oheka Complex (the "Sale").[1]

[1] As specifically set forth in these Bid Procedures, the Debtor will consult with 135 W. Gate LLC (the "Secured Creditor").

## A. The Debtor and its Prospective Condominium Development

6. The Debtor is the fee owner of the Real Property.

7. The Debtor: (i) is a single asset real estate debtor within the meaning of Bankruptcy Code section 101(51B); (ii) does not have any employees; and (iii) continues in the operation and management of its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

8. On or about June 17, 2022, the Debtor filed a zoning change application with the Town of Huntington (the "Town") and the Town Board to allow for the construction of the Oheka Residences on the 5.1 acre portion of the Debtor's Real Property located in the Town's Historic Building Overlay District (the "HBOD").

9. On March 20, 2023, the Town Board passed Resolution 2023-140, which adopted Local Law No. 37-2022, as amended (the "Local Law") which amended Town Code §198-7, the Town's zoning map ordinance, to allow for the construction of a 95-unit residential condominium complex (the "Oheka Residences") in the HBOD subject to the filing of new, enumerated covenants and restrictions requiring, *inter alia*, (i) the establishment of the Oheka Historic Structure Endowment and remittance of a percentage of the Oheka Residences' annual condominium dues for the preservation of the Oheka Castle & Resort (the "Oheka Castle") (as more particularly described in the Local Law), and (ii) that "[p]rimary access to and from [Oheka Residences] must emanate from East Gate Drive, and if [the Debtor] is precluded from using East Gate Drive, [the Debtor] shall apply to the Town Board for any modification to the plan, including an alternate access point" (all of the foregoing is referred to together as the "Development Rights")).

10. The Debtor is a party to an adversary proceeding pending before the Bankruptcy Court ("Easement Litigation") concerning whether the Debtor has a legal right to use East Gate Drive for access to and from the Oheka Residences, which is disputed by East Gate Land LLC, an affiliate of the Secured Creditor ("East Gate Land"). East Gate Land purchased the land adjacent to the Oheka Real Property from Cold Spring Country Club ("CSCC"), including property known as the spur ("Spur") over which the Debtor claims to have an easement.[2] East Gate Land maintains that the Debtor does not have an easement and cannot use East Gate Drive or the Spur for access to build Oheka Residences or for ingress to or egress from Oheka Residences. The Debtor asserts that it has used the Spur for over 80 years. The dispute is pending before the Bankruptcy Court under Adversary Proceeding No. 25-08097.

[2] For the avoidance of doubt, the Sale process herein does not include the East Gate Land adjacent property that is owned by East Gate Land.

11. CSCC previously filed an action to invalidate the Local Law and associated environmental review, but that action was dismissed by the Supreme Court, State of New York, County of Suffolk. CSCC appealed that decision and it is pending before the Appellate Division, Second Department Index No. 2023-11450 ("Article 78 Action").[3]

12. On March 6, 2025, the Debtor submitted a site plan application (SP-25-10014) with respect to the Oheka Residences.

13. On May 6, 2026, the New York State Department of Environmental Conservation ("NYSDEC") reviewed the Debtor's submission and approved the site plan.[4]

14. The Debtor has asserted that NYSDEC has approved the pump station and force main design plans, as well as the pump station and force main engineering design report. The Debtor has asserted that it is currently working to obtain Nassau County's final approval and support so that the out-of-district sewer connection may proceed to Suffolk County for its review and approval. The Debtor has asserted that it has already submitted its formal application materials to Suffolk County.

15. The Debtor has asserted that it has submitted a site plan application to the Town of Huntington and is currently under review.

16. The Debtor has asserted that the remaining Nassau County approvals and supporting items for the out-of-district sewer connection are as follows:

| | | |
|---|---|---|
| (a) | Nassau County Department of Health Support Memorandum | Obtained. |
| (b) | New York State Department of Environmental Conservation Letter | Obtained. |
| (c) | Nassau County Executive Approval Memorandum | NCDPW will be issuing this letter shortly. |
| (d) | Nassau County Legislative Approval of Agreement | In process and will be obtained in the near future. |

17. On June 29, 2026, the Debtor asserted that it obtained Nassau County Department of Public Works approval to self-certify the pump station and force main engineering design plans and engineering design reports for the Oheka Residences.

18. On July 23, 2024, the Debtor filed an application seeking an alternative access right to utilize Westgate Drive for access to and from the Oheka Residences development project.

[3] Parties are encouraged to review all pleadings in the case and all documents uploaded to the Debtor's data room.
[4] The Secured Creditor does not agree with the Debtor's descriptions contained herein outlined in paragraph 13 -18 of the status of these matters. All bidders are encouraged to perform their own due diligence with respect to the Sale.

## B. The Non-Debtor Entities

19. Oheka Castle is the building that sits on the Real Property within which other related entities operate restaurant, and catering facilities for, among other occasions, weddings, parties and corporate events. For the avoidance of doubt, the Secured Creditor's collateral consists of all assets contemplated to be sold hereunder, including the Real Property and the Non-Debtor Assets. The operations at Oheka Castle are conducted through two entities identified below.

20. Oheka Catering, Inc. is the owner of Oheka Catering I, LLC and Oheka Management, LLC. These three entities are not in bankruptcy and operate under a state court order pursuant to which a state court receiver was appointed to oversee the financial affairs of these entities (the "Receiver"). The Receiver is an economic receiver and provides monthly operating reports for the operations of Oheka Castle and its entities, otherwise identified as the Oheka Opco Entities. The Oheka Castle and its Oheka Opco Entities have and continue to operate in the ordinary course of business, operating its restaurant, booking weddings and events.[5]

21. Oheka Catering Opco operates the catering and restaurant and the Oheka Castle facility, and Oheka Management Opco operates the facility and hotel revenue at Oheka Castle; these operations are conducted pursuant to a lease agreement with the Debtor.

22. On July 23, 2026, the Oheka Operating Entities, by their officers, executed a unanimous consent and authorization for the Oheka Operating Entities to sell the Non-Debtor Assets along with a Contribution Agreement whereby the Oheka Operating Entities agreed to contribute the Non-Debtor Assets in connection with a sale of the Real Property and the Non-Debtor Assets, all of which were filed on September 8, 2026 [ECF Dkt. No. 156] pursuant to these Bid Procedures, which includes cash on hand, revenue, furniture, fixtures, equipment, contracts, weddings, bookings, and all assets of those entities in connection with the Debtor's sale of the Real Property (certain of the furniture, fixtures and equipment is owned by the Debtor and detailed information as to which entity owns which asset will be provided as part of the sale process).

23. The Real Property and all of the Non-Debtor Assets are subject to the first priority Mortgage and liens held by the Secured Creditor. The Secured Creditor has asserted that it is owed $58,946,882.24 through July 27, 2026 at a per diem interest rate of $6,747.04, plus legal fees and expenses, which are continuing to accrue and are currently $1,205.516 as of July 27, 2026.

24. Any purchaser who is deemed the Successful Bidder (as defined below) at the Auction and who purchases both the Real Property and the Non-Debtor Assets shall fully comply with all obligations, contracts, weddings, scheduled events that have already been booked at Oheka Castle as of the date of the Auction through March 31, 2028. FOR THE AVOIDANCE OF DOUBT, A SUCCESSFUL BIDDER WHO PURCHASES ONLY THE REAL PROPERTY AND NOT THE NON-DEBTOR ASSETS IS NOT OBLIGATED TO AND DOES NOT HAVE TO COMPLY WITH ANY OF THE OBLIGATIONS WITH RESPECT TO THE NON-DEBTOR ASSETS AND MAY ASK THE DEBTOR TO REJECT ANY RELATED CONTRACTS WITH THE NON-DEBTORS (THE OHEKA OPERATING ENTITIES).

---

[5] The Receiver monthly reports are contained in the data room.

25. At Closing, if the Successful Bid is for the Real Property and the Non-Debtor Assets (i.e., the Oheka Complex), then in such event the Debtor shall assign and the Successful Bidder shall assume all wedding contracts, events, or other service contracts that have been booked by the date of the Auction. Any contract, wedding, or event scheduled for a date after March 31, 2028 shall be deemed subject to any and all rights of the Successful Bidder to cancel the event and return the deposit being held by the Oheka Operating Entities.

## C. Important Dates and Deadlines

26. These Bid Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers to purchase all or a portion of the Oheka Complex. The Oheka Complex—including the Real Property and the Non-Debtor Assets—will be offered for sale through an Auction.

27. The key dates and deadlines, which are subject to the Debtor's right, in consultation with the Secured Creditor, which consent shall not be unreasonably withheld, to modify such dates, *provided* that the Debtor provides notice in accordance with the terms of the Bid Procedures Order, are as follows:

| Event or Deadline | Date and Time |
|---|---|
| Bid Registration Deadline | October 23, 2026 at 5:00 p.m. (prevailing Eastern Time) |
| Auction (if necessary) | October 27, 2026 at 10:00 a.m. (prevailing Eastern Time) at The Dominick Hotel, 246 Spring Street, New York, NY, or such other place as determined by the Auctioneer and the Debtor. |
| Objection Deadline to Sale | October 28, 2026 at 5:00 p.m. (prevailing Eastern Time) |
| Hearing to Approve Sale | October 29, 2026 at 11:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Closing Date | Thirty (30) days after the Bankruptcy Court's entry of an order approving the Sale |

## D. Public Announcement of Auction

28. As soon as reasonably practicable after the Bankruptcy Court's entry of the Bid Procedures Order on the docket, the Debtor in coordination with Concierge Auctions, LLC (the "Auctioneer") shall: (i) cause a notice of the Sale (the "Sale Notice") to be served on all creditors and any other party in interest; and (ii) publish the Sale Notice , with any modifications necessary for ease of publication, in a manner consistent with the Auctioneer 's recommendations and provide such marketing material, flyers, teasers as the Auctioneer deems necessary to maximize the value of the Real Property and the Non-Debtor Assets.

## E. Participation Requirements

29. To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in purchasing all or any portion of the Real Property and the Non-Debtor Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtor's counsel and the Auctioneer the following Bid Documents (collectively, the "Participation Documents"):

a. an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtor, Auctioneer, in consultation with the Secured Creditor; and

b. identity of the Potential Bidder, including its legal name, jurisdiction and form of organization as well as the identity of any controlling persons, and/or guarantors of such entity.

30. The Debtor and the Auctioneer shall reasonably consult with, and reasonably coordinate with, the Secured Creditor, regarding the marketing process contemplated by these Bid Procedures (including communications involving, and any information provided to, Potential Bidders). Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtor, or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale.

31. To the extent any Potential Bidder does not provide the required Participation Documents identified above, the Debtor and Auctioneer shall withhold any due diligence documents requested until such time as the Participation Documents information is cured. The Debtor shall promptly inform the Secured Creditor of any such determination. For the avoidance of doubt, a Potential Bidder who has not submitted acceptable Bid Documents may not submit a Bid and any sch Bid will be disregarded.

## F. Due Diligence

32. Only Potential Bidders that have submitted acceptable Participation Documents in accordance with these Bid Procedures shall be eligible to receive due diligence information and access to the Debtor's electronic data room and to additional non-public information regarding the Debtor.

33. All due diligence requests must be directed to the Auctioneer. The Debtor will provide to each Potential Bidder, reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtor shall post substantially all written due diligence information provided to any Potential Bidder to the Debtor's (or the Auctioneer 's) electronic data room.

34. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtor or a potential Sale transaction with any insider (as defined in section 101(31) of the Bankruptcy Code), affiliate of any insider, account holder, customer, supplier, or contractual counterparty of the Debtor without the prior written consent of the Debtor. The due diligence period will end on the Bid Registration Deadline (as defined herein), and after the Bid Registration Deadline, the Debtor shall have no obligation to furnish any further due diligence information.

35. In connection with the provision of due diligence information to Potential Bidders, the Debtor shall not furnish any confidential information relating to the Debtor or a potential Sale transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

36. The Debtor and its advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided, however*, that the Debtor may decline to provide such information to Potential Bidders that, in the Debtor's reasonable business judgment, and in consultation with the Auctioneer, have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale.

37. Notwithstanding anything to the contrary in these Bid Procedures, all substantive direct communications, including any due diligence requests, with Potential Bidders and Qualified Bidders (as defined below) shall be made to the Auctioneer (email being sufficient), or Debtor's counsel.

38. Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtor, in consultation with the Auctioneer regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Sale transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtor, in consultation with the Auctioneer, to determine that such bidder is no longer a Potential Bidder (or a Qualified Bidder).

## G. <u>Bidder Registration Deadline and Bid Requirements</u>

39. Only Potential Bidders that have submitted acceptable Bid Documents in accordance with these Bid Procedures shall be eligible to submit a written, irrevocable and binding offer to purchase: (i) the Real Property and the Non-Debtor Assets; or (ii) just the Real Property[6] (a "<u>Bid</u>"). To be eligible to participate in the Auction with respect to the Sale of the Oheka Complex, a Potential

[6] The Non-Debtor Assets are not independently being offered for Sale.

Bidder must deliver its Bid to the Debtor and its advisors on or before **October 23, 2026 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Registration Deadline"). Each such Bid must satisfy each of the following Bid requirements (collectively, the "Bid Requirements") as shall be determined by the Debtor in its business judgment, in consultation with the Auctioneer:

(i) Good Faith Deposit: Each Bid must be accompanied by evidence that a good faith deposit of $750,000 (the "Good Faith Deposit") has been made or is concurrently being made in immediately available funds to Debtor's counsel's attorney escrow account. For the avoidance of any doubt, the Secured Creditor is not required to submit any Good Faith Deposit to Bid;

(ii) Purchase Agreement: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, the form of which will be provided to a Potential Bidder upon request, and any other related material documents pursuant to which the Potential Bidder proposes to effectuate the proposed Sale.

(iii) Buyer's premium: Each Bid must agree to pay the buyer's premium in the amount of six (6%) percent of the amount of the bid (the "Buyer's Premium"). Notwithstanding the foregoing, in the event the Secured Creditor chooses to bid cash above and beyond its Credit Bid (as defined herein) and the Secured Creditor is the Successful Bidder (as defined herein) then only in such event will the Secured Creditor be responsible for paying the Buyer's Premium but only on any cash amount bid over the Secured Creditor's Credit Bid (as defined below).[7]

(iv) Committed Financing: Each Bid must include proof of available funds in the full Bid amount or proof of committed financing, documented to the Debtor's reasonable satisfaction, that demonstrates the Potential Bidder has received sufficient funding commitments to satisfy the Purchase Price and any other obligations set forth in its Bid.

(v) No Contingencies; No Financing or Diligence Outs: Notwithstanding anything to the contrary contained in these Bid Procedures:

(a) no Bid shall be qualified or otherwise contain any closing conditions or contingencies including, without limitation, contingencies relating to: (i) the dismissal of the Article 78 Action; (ii) the outcome of the Easement Litigation; (iii) the outcome of any of the pending appeals related to the underlying foreclosure action (Index Nos. 2025-06289 and 2023-03058 or the Article 78 Action; and (iv) the receipt of any site plan approvals, permits or other governmental approvals for the Real Property, whether in connection with Oheka Residences or otherwise; and

[7] A full discussion of the Broker and Auctioneer 's compensation package can be found in the order authorizing the Debtor to retain the Broker and the Auctioneer [ECF 159].

(b) no Bid shall be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of their due diligence. Potential Bidders shall have completed their due diligence by the Bid Registration Deadline, including all business, legal, accounting, and other confirmatory diligence.

(vi) Authorization: Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid;

(vii) Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment: Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Potential Bidder agrees to all of the terms of the Sale set forth in these Bid Procedures;

(viii) Irrevocable: Any Bid must be and remain binding and irrevocable unless and until the Debtor accepts a higher Bid at the Auction and identifies a Successful Bidder and selects a Backup Bidder (as defined herein);

(ix) No Fees: Each eligible Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for any breakup fee, transaction fee, termination fee, expense reimbursement, or similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

(x) Adherence to Bid Procedures: By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Sale process, or an Auction (if held), after conclusion of the selection of the Successful Bidder (as defined herein);

(xi) Consent to Jurisdiction: Any Potential Bidder hereby submits to the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Debtor's qualification of Bids, an Auction (if held), the construction and enforcement of these Bid Procedures, any plan of reorganization, the Sale documents, and the Sale closing, as applicable; and

(xii) Backup Bid: Each Bid shall provide that the Potential Bidder will serve as a backup bidder if such Potential Bidder's bid is designated as the next highest or otherwise best bid for all or any portion of the Oheka Complex (including all or any portion of the Non-Debtor Assets or just the Real Property).

40. Only Bids fulfilling all of the preceding requirements contained herein may, at the Debtor's reasonable discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtor's reasonable discretion, be deemed to be "Qualified Bidders."

41. Within two (2) days after the Bid Registration Deadline, the Debtor shall determine, after consultation with the Auctioneer, which Potential Bidders are Qualified Bidders, and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in any Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtor; *provided*, *however*, that the Debtor may, in consultation with the Auctioneer and the Secured Creditor: (i) provide the Potential Bidder with the opportunity to remedy any deficiencies prior to an Auction; and (ii) waive certain requirements for good cause.

**H. Evaluation of Qualified Bids**

42. Prior to any Auction, the Debtor and the Auctioneer will evaluate Qualified Bids to identify which Qualified Bid will serve as the opening Bid at the Auction (the "Starting Bid"). Prior to the selection of the Successful Bidder, the Debtor may, in the Debtor's reasonable business judgment, engage in negotiations with the participating bidders with respect to their Bids. The Debtor reserves the right to reject any Qualified Bidder who the Debtor believes is not financially capable of consummating its proposed Sale.

43. Prior to the start of the Auction, the Debtor will announce the Starting Bid to each Qualified Bidder present at the Auction, but Qualified Bidders may appear virtually.

44. If any Bid is determined by the Debtor not to be a Qualified Bid, the Debtor will refund such bidder's Good Faith Deposit within two (2) business days after the Bid Registration Deadline.

45. Notwithstanding anything to the contrary contained in these Bid Procedures, the Secured Creditor shall automatically be deemed a Qualified Bidder and shall have the right to attend and participate at the Auction and to credit bid up to the full amount of its allowed claim, including any interest calculated through the Auction date (the "Credit Bid"), at the Auction pursuant to section 363(k) of the Bankruptcy Code without being required to submit a Good Faith Deposit or otherwise satisfy the Bid Requirements set forth herein; *provided* that any such Credit Bid include a cash component sufficient to pay all cure claims associated with any assumed and assigned executory contracts or leases. In the event the Secured Creditor's Bid is designated the highest or best offer for an amount over the amount of its Credit Bid, the Secured Creditor is subject to all requirements set forth herein with respect to financial ability to close the Sale timely, including having to provide proof of funds and requisite corporate authority.

**I. No Qualified Bids**

46. If no Qualified Bids other than the Credit Bid are received by the applicable Bid Registration Deadline, then the Debtor, in consultation with the Auctioneer, may cancel the applicable Auction and shall designate the Credit Bid as the Successful Bid and pursue entry of an Order approving the Sale to the Secured Creditor. The Debtor shall promptly file a notice of cancellation of any Auction and designation of the Credit Bid as the Successful Bid with the Bankruptcy Court.

**J. The Auction**

47. If one or more Qualified Bids are received by the Bid Registration Deadline, the Auctioneer shall conduct an Auction with respect to the Oheka Complex (including the Real Property and the Non-Debtor Assets or just the Real Property) which shall commence on **October 27, 2026 at 10:00 a.m. (prevailing Eastern Time)** at The Dominick Hotel, 246 Spring Street, New York, NY 10013, or such other place as the Debtor and Auctioneer determine, and continue until such time as there is one final Successful Bidder, *provided*, *however*, that the Debtor, in consultation with the Auctioneer and the Secured Creditor, may determine to reschedule the Auction to a different date and/or place, or conduct it via remote video in which case the Debtor and/or the Auctioneer shall timely notify all Qualified Bidders of any such changes, and promptly file a notice of the change on the Bankruptcy Court's docket for the Chapter 11 Case. Qualified Bidders may participate at the Auction via Zoom which information shall be provided no later than two (2) days prior to the Auction.

48. Any Auction will be conducted by the Auctioneer in accordance with the following procedures ("Auction Procedures"):

(a) except as otherwise provided herein, an Auction will be conducted openly;

(b) only Qualified Bidders, including the Secured Creditor, shall be entitled to bid at the Auction;

(c) the Qualified Bidders or their duly authorized representatives shall appear at the Auction;

(d) only the following parties shall be permitted to attend the Auction: (i) the Debtor and its advisors; (ii) the Secured Creditor and its advisors; (iii) the Qualified Bidders and/or their duly authorized representatives; and (iv) any other creditor party who submits a written request to the Debtor to attend the Auction and the Debtor grants such request; *provided however* that such request shall be actually received by the Debtor's counsel no later than 48 hours prior to the commencement of the Auction; *provided, further,* that the Debtor reserves the right to retract its permission at any point during the Auction if such creditor party does not act in good faith or in an orderly fashion during the Auction;

(e) each Qualified Bidder will be permitted a reasonable time to respond to previous bids at an Auction, as determined by the Debtor and the Auctioneer;

(f) the bidding will be transcribed or recorded by a court reporter;

(g) Qualified Bidders (or their representatives) may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale; and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase (i) the Real Property and the Non-Debtor Assets; or (ii) just the Real Property;

(h) the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid;

(i) neither the Debtor nor the Auctioneer shall consider any bids made after they have designated the Successful Bidder and the Backup Bidder and have closed the Auction;

(j) the Debtor reserves the right, in its reasonable business judgment, in consultation with the Auctioneer and the Secured Creditor, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Debtor and/or any Qualified Bidder; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, in consultation with the Auctioneer, may require. In the event the Auction is adjourned, the Debtor shall promptly file a notice with the Court of such adjournment and include the date for the continued Auction; and

(k) the Auction will be governed by such other auction procedures as may be announced by the Debtor and its advisors or by the Auctioneer from time to time on the record at the Auction; *provided however* that such other procedures are: (i) not inconsistent with the Bid Procedures Order, these Bid Procedures, the Bankruptcy Code, or any other order of the Court; (ii) disclosed orally or in writing to all Qualified Bidders; and (iii) reasonably determined by the Debtor to further the goal of attaining the highest or otherwise best offer for the Oheka Complex (including the Real Property and the Non-Debtor Assets or just the Real Property), as applicable.

(l) The Starting Bid will be determined prior to the Auction, and all Bidders will be advised of the amount at the opening of the Auction. At the Auction, the bid increments will be determined by the Auctioneer and will be in the amount of no less than $50,000 per bid or such other amount that the Debtor and its retained professionals deem appropriate at the Auction.

**K. Acceptance of the Successful Bid**

49. An Auction shall continue until only one Qualified Bid is designated as the highest or best bid (the "Successful Bidder") to purchase either the Real Property or the Real Property and the Non-Debtor Assets (the "Purchased Assets") in the Auctioneer's reasonable business judgment in consultation with the Debtor, in a manner consistent with the exercise of its fiduciary duties, after consultation with the Auctioneer, and outlined below in further detail, and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtor, at which point, the Debtor and the Auctioneer shall close the Auction.

50. The Debtor shall file a notice setting forth the results of an Auction (if any) and identify any Successful Bidder with the Court within one day after the close of the Auction. Notwithstanding anything to the contrary in these Bid Procedures, the Debtor shall not be required to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

51. Within two (2) business days of the selection of the Successful Bidder, such Successful Bidder shall increase the amount of its Good Faith Deposit to equal, in the aggregate, ten (10%) percent of the Successful Bid, by wire transfer of immediately available funds to the Debtor's special real estate counsel, "Jaspan Schlesinger Narinder, LLP".

52. The Buyer's Premium shall be deemed to have been immediately earned upon the Court entering an Order approving the Sale. No later than two (2) days from the Bankruptcy Court's entry of the Sale Order (as defined below), the Successful Bidder shall pay the Buyer's Premium by wire transfer to the Debtor's special real estate counsel, "Jaspan Schlesinger Narinder, LLP"

53. Failure of the Successful Bidder to increase its Good Faith Deposit or pay the Buyer's Premium in accordance with these Bid Procedures shall result in an immediate default under these Bid Procedures and the forfeiture of all earnest monies paid, including without limitation, any part of the Good Faith Deposit paid.

54. Each of the Successful Bidder and the Debtor shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

**L. Backup Bidder**

55. At the conclusion of the Auction, the Debtor, in consultation with the Auctioneer and its professionals, shall also determine the next highest or best Qualified Bid after the Successful Bid (the "Backup Bid") and the Qualified Bidder that submitted the Backup Bid, who shall be deemed the ("Backup Bidder"). The Backup Bidder shall be required to keep its Backup Bid open and irrevocable, and its Good Faith Deposit shall be held in escrow, until the successful closing of the Sale transaction with the Successful Bidder.

56. The Sale is subject to the Bankruptcy Court entering an order approving the Sale (the "Sale Order") and an order confirming the Debtor's chapter 11 plan (the "Confirmation Order"). The Bankruptcy Court shall hold a hearing on the confirmation of the Sale and Confirmation of the Debtor's plan on **October 29, 2026**. At closing, the Successful Bidder must pay the balance of the Successful Bid, after taking into account the Good Faith Deposit, to the Debtor or its counsel by wire transfer in immediately available federal funds unless the Debtor, in consultation with its counsel, in its sole discretion, authorizes payment by bank or cashier's check. **The Successful Bidder must close title to the Purchased Assets in accordance with the Successful Bid on or before thirty (30) days following the entry of the Sale Order ("Closing Date") notwithstanding an appeal of either the Sale Order or the Confirmation Order, unless the appellant(s) has obtained a stay pending such appeal. TIME BEING OF THE ESSENCE as to the Successful Bidder,** although such Closing Date may be extended by the Debtor with the consent of the Secured Creditor not to be unreasonably withheld. The Debtor has no obligation to extend the Closing Date.

57. To the extent that the Debtor grants any extension of the Closing Date, the Successful Bidder shall provide to the Debtor, within one day of the grant of such extension, an additional, non-refundable deposit equal to five (5%) percent of the Successful Bid ("Additional Deposit"). The Additional Deposit shall be made by wire transfer in immediately available federal funds (the Additional Deposit together with the Good Faith Deposit, shall be collectively deemed the "Deposit"). In addition, all closing adjustments shall be made as of the original Closing Date. Further, the Successful Bidder shall also be responsible for all real estate taxes, costs, fees, and expenses incurred by the Debtor's estate after the original Closing Date through the date of the actual closing of the Sale of the Purchased Assets. The Successful Bidder shall also be responsible for any additional interest, fees, and other amounts due to the mortgage holder(s) including the Secured Creditor and any other party asserting a lien against the Real Property and/or Non-Debtor Assets from the original Closing Date through the actual closing of the Sale in accordance with the Successful Bid. If the Successful Bidder fails to close on or before the extended Closing Date, the Debtor's estate shall retain the Deposit, and the Successful Bidder thereby waives all rights to the Deposit.

58. If the Successful Bidder fails to increase its Good Faith Deposit, pay the Buyer's Premium or close the Sale, as required by these Bid Procedures, the Debtor may within three (3) business days of such failure, designate the Backup Bidder as the Successful Bidder without conducting a new Auction and close with the Backup Bid without further order of the Bankruptcy Court, provided: (i) the Backup Bid was identified at the Sale hearing and approved by the Sale Order; and (ii) the Debtor promptly files a notice designating the Backup Bidder as the Successful Bidder with the Bankruptcy Court (the "Backup Bidder Notice"). Upon the filing of the Backup Bidder Notice, the Backup Bidder shall automatically be deemed the Successful Bidder and shall be obligated to perform as the Successful Bidder as required by these Bid Procedures.

59. Within two (2) business days of filing the Backup Bidder Notice, the Backup Bidder shall deliver to the Debtor, by wire transfer in immediately available federal funds, to "Jaspan Schlesinger Narinder, LLP", an amount sufficient to increase its Good Faith Deposit to ten (10%) percent of the Backup Bid amount ("Backup Bid Purchase Price"), *plus* the Buyer's Premium of the amount of the Backup Bid, within five (5) days thereafter. Failure of the Backup

Bidder to increase its Good Faith Deposit or pay the Buyer's Premium required by these Bid Procedures shall result in an immediate default under these Bid Procedures and forfeiture of all earnest monies paid, including without limitation, any part of the Good Faith Deposit paid by the Backup Bidder. paid.

60. If the Backup Bidder is designated the Successful Bidder in accordance with these Bid Procedures, it shall **not** receive credit for any monies or funds paid by the original Successful Bidder. The Backup Bidder must close title no later than the later of thirty (30) days following the filing of the Backup Bidder Notice or entry of the Sale Order, **TIME BEING OF THE ESSENCE as to the Backup Bidder**, although such closing date may be extended by the Debtor with the consent of the Secured Creditor not to be unreasonably withheld. The Debtor has no obligation to extend such closing date.

61. To the extent that the Debtor grants any such extension, the Backup Bidder shall provide to the Debtor at least two (2) business days prior to the scheduled closing date an additional, non-refundable deposit equal to five (5%) percent of the Backup Bidder's Purchase Price ("New Additional Deposit"). The New Additional Deposit shall be made by wire transfer in immediately available federal funds unless the Debtor in its sole discretion authorizes payment of the New Additional Deposit by bank or cashier's check made payable to "Jaspan Schlesinger Narinder, LLP," and, together with its Good Faith Deposit, shall be deemed the "New Deposit". In addition, all adjustments shall be made to the original closing date. Further, the Backup Bidder shall also be responsible for all real estate taxes, costs, fees, and expenses incurred by the Debtor's estate after the Backup Bidder's closing through the date of the actual closing of the Sale in accordance with the Backup Bid. The Backup Bidder shall also be responsible for any additional interest due to any mortgage holder(s) including the Secured Creditor or other party asserting a lien against the Real Property and the Non-Debtor Assets from the Backup Bidder's closing through the actual closing of the Sale in accordance with the Backup Bid.

62. The closing shall take place at a location as determined by the Debtor.

63. **Transfer Taxes**. Under the Debtor's chapter 11 plan, to the maximum extent provided by Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the chapter 11 plan (including an instrument of transfer executed in furtherance of the Sale), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the Sale of the Property in connection with or in furtherance of the chapter 11 plan. To the extent that any such taxes are due in connection with the Sale transaction, the Successful Bidder will be responsible to pay all such taxes, costs and expenses.

64. At or before the Closing, the Successful Bidder shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other inspections; appraisals, reports and other costs of due diligence, and County, State, City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the Sale due in connection with the transfer of the Real Property and/or the Non-Debtor Assets.

65. The Successful Bidder acknowledges that it will be responsible for the completion of any transfer forms, if required. The Debtor shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Bidder acknowledges that it will be responsible for the preparation of all closing documents required including, but not limited to, any transfer tax forms. In connection with the closing and closing date, the Successful Bidder is hereby given notice that **TIME IS OF THE ESSENCE** against the Successful Bidder and the failure of the Successful Bidder to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in an immediate forfeiture of the Deposit, or New Deposit, as the case may be and the termination of such Successful Bidder's right to acquire the Real Property and/or Non-Debtor Assets under these Bid Procedures.

66. The Successful Bidder shall be obligated to close title to the Real Property and/or the Non-Debtor Assets in accordance with the Successful Bid or the Backup Bid, as applicable, and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit such Successful Bidder to cancel or avoid its obligation under these Bid Procedures other than the Debtor's inability to deliver insurable title to the Real Property.

## M. Highest or Best Bid

67. Expenses incurred by any Qualified Bidder, the Successful Bidder or the Backup Bidder, or any other bidder, concerning any due diligence shall be the sole responsibility of such bidder and, under no circumstances shall the Auctioneer, the Debtor, its other retained professionals, or the estate be responsible for, or pay, such expenses. The foregoing shall not be deemed to imply a contingency upon the results of any such due diligence.

68. The Successful Bidder shall order an examination of title of the Real Property ("Title Report") within two business days from the date of the entry of the Sale Order, or as to a Backup Bidder, the Backup Bidder Notice, from a reputable title insurance company or abstract company doing business in New York State and shall furnish a copy of the Title Report to the Debtor's counsel within three (3) days of the Successful Bidder's receipt of the Title Report.

69. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. If the Successful Bidder, or the Backup Bidder is unable to obtain title insurance, then the Debtor, in its sole discretion, shall have the option but not the obligation to obtain title insurance on behalf of the Successful Bidder at their expense to be paid at the closing.

70. The Debtor, its other retained professionals, or the estate have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Property, the Non-Debtor Assets or the Sale, which might be pertinent to the purchase of the Real Property and/or the Non-Debtor Assets, including, without limitation (i) the current and future easement, approvals, subdivision, or objections thereto, (ii) the current or future real estate tax liability, assessment or valuation of the Real Property and Non-Debtor Assets, (iii) the potential qualification of the Real Property and Non-Debtor Assets for any and all benefits conferred by or

available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated, (iv) the compliance or non-compliance of the Real Property and Non-Debtor Assets, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Real Property and Non-Debtor Assets, (v) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Real Property and Non-Debtor Assets from any source, including, but not limited to, any state, city or federal government or institutional lender, (vi) the current or future use of the Real Property and Non-Debtor Assets, (vii) the current or future rents, other operating incomes or expenses, (viii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof, and (ix) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Real Property and Non-Debtor Assets, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the Real Property and Non-Debtor Assets.

71. Each bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made, and that the Auctioneer, the Debtor, its retained professionals or the estate, or representatives shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Real Property and Non-Debtor Assets, made or furnished by the Auctioneer, the Debtor, its retained professionals or any real estate Auctioneer, agent, employee, servant or other person or professional representing or purporting to represent the Auctioneer, the Debtor, its retained professionals or the estate unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within these Bid Procedures.

72. The Real Property and Non-Debtor Assets are being sold **"AS IS" "WHERE IS","WITH ALL FAULTS"**, pursuant to Bankruptcy Code section 363(b), (f), and (m) and without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any monetary liens, claims, interests or encumbrances of whatever kind or nature, with any liens, if any, to attach to the proceeds of the Sale in such order and priority as they existed immediately prior to the actual closing on the Sale of the Oheka Complex (or any portion of the Non-Debtor Assets or just the Real Property), and the Sale of the Oheka Complex (or any portion of the Non-Debtor Assets or just the Real Property) are subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) any leases; and (f) environmental conditions; *provided*, *however*, the Real Property and Non-Debtor Assets shall be delivered free and clear of any and all monetary liens. By delivering their respective deposits, all bidders acknowledge that they have had the opportunity to review the Oheka Complex (or any portion of the Non-Debtor Assets or just the Real Property), the state of title thereof and laws, rules, and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Oheka Complex (or any portion of the Non-Debtor Assets or just the Real Property) in making their bids. The Auctioneer, the Debtor, its representatives, or its

retained professionals or any of their collective representatives makes no representations or warrantees with respect to the permissible uses of any of Oheka Complex (or any portion of the Non-Debtor Assets or just the Real Property) including, but not limited to, the zoning of such Oheka Complex (or any portion of the Non-Debtor Assets or just the Real Property).

73. Each Qualified Bidder hereby is deemed to acknowledge and represent that by submitting a Bid it : (a) has had an opportunity to conduct any and all due diligence prior to making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Oheka Complex in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Oheka Complex (or any portion of the Non-Debtor Assets or just the Real Property) or completeness of any information provided in connection therewith or an Auction, except as expressly stated in the Potential Bidder's proposed purchase agreement.

74. The Debtor shall convey title to the Real Property by delivery of a quitclaim deed and assign all Development Rights and building approvals. Oheka Catering Opco and Oheka Management Opco and Debtor, to the extent necessary, shall convey title to the Non-Debtor Assets by delivery of a bill of sale and assignment and assumption of contracts to the Successful Bidder.

75. If the Debtor is unable to deliver the Real Property and/or Non-Debtor Assets as the case may be, in accordance with these Bid Procedures for any reason whatsoever, the Debtor's only obligation will be to refund the Deposit, or New Deposit (if paid to the Debtor), without interest, to the Successful Bidder or Backup Bidder, as applicable, and upon such refund, the Successful Bidder or Backup Bidder will have no claim or recourse against the Auctioneer , the Debtor, its retained professionals and/or the estate and shall have no further rights under these Bid Procedures.

## N. Approval of Sale

76. The Debtor will present the results of any Auction to the Bankruptcy Court for approval at the Sale hearing, at which certain findings will be sought from the Bankruptcy Court regarding the marketing and sale process and the Auction, including, among other things, that: (a) an Auction was conducted, and the Successful Bidder was selected, in accordance with these Bid Procedures; (b) an Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in the Bid Procedures; and (d) consummation of any Sale as contemplated by the Successful Bid will provide the highest or otherwise best offer for the Debtor's assets, and is in the best interests of the Debtor and its estate.

## O. Return of Good Faith Deposit

77. The Good Faith Deposit of any Qualified Bidders that are not a Successful Bidder or a Backup Bidder will be returned within two (2) business days after the Auction or upon the permanent withdrawal of the proposed Sale, and the Good Faith Deposit of any Backup Bidder will be returned within two (2) business days after the consummation of the Sale in accordance with the original Successful Bid or upon the permanent withdrawal of the proposed Sale.

**P. <u>Reservation of Rights</u>**

78. The Debtor, in consultation with the Auctioneer, and with consent of the Secured Creditor not to be unreasonably withheld, reserves its rights to modify these Bid Procedures in its reasonable business judgment, in a manner consistent with the exercise of its fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the Sale, including, without limitation: (a) amending or extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; and (d) canceling the Auction.

**Q. <u>Credit Bid Rights</u>**

79. Notwithstanding anything to the contrary contained in the Bid Procedures Order, these Bid Procedures, or the Sale Notice to the contrary, nothing shall impair or diminish the right of the Secured Creditor to exercise its credit bid rights pursuant to Bankruptcy Code section 363(k) and to submit a Credit Bid and to attend and bid for the Real Property or Oheka Complex at any Auction.

**R. <u>Consent to Jurisdiction</u>**

80. All Qualified Bidders will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes arising from or relating to the Sale or these Bid Procedures, as applicable, and consented to the entry of a final order or judgment respecting any such disputes if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

81. Any parties raising a dispute relating to these Bid Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**S. <u>Auctioneer Retention</u>**

82. Concierge Auctions, LLC and the Modlin Group LLC have been duly authorized by Order of the Bankruptcy Court dated September 14, 2026 [ECF 159] to develop and implement the marketing of, and any Auction with respect to, bidding for (i) the Real Property and the Non-Debtor Assets or (ii) just the Real Property.

**U. <u>Limitation on Secured Creditor's Consultation Rights and Access to Information</u>**

83. Notwithstanding any provision in these Bid Procedures to the contrary, in the event that the Secured Creditor, or any party holding the right to bid on behalf of the Secured Creditor, provides notice of its intent to Credit Bid, submits a Credit Bid, or otherwise participates as a bidder in the Auction (in each case, a "<u>Credit Bid Election</u>"), then from and after the date of such Credit Bid Election, the Secured Creditor: (a) shall not be entitled to any of the consultation or consent rights otherwise provided for herein, including, but not limited to, with respect to the determination of Qualified Bidders or Qualified Bids; (b) shall have no right to consent to, advise on, or object to the determination of Qualified Bids; (c) shall not receive access to any other Bids,

stalking horse proposals, or expressions of interest submitted by other Potential Bidders or Qualified Bidders; (d) shall no longer have any access to any non-public data room metrics or analytics reflecting the diligence activity of other Potential Bidders or Qualified Bidders; and (e) shall be excluded from any deliberations among the Debtor, the Auctioneer and their respective advisors regarding bid selection, Auction strategy, and the designation of the Starting Bid, the Successful Bidder, or the Backup Bidder. The Secured Creditor shall advise the Debtor of its intention to credit bid October 22, 2026.

84. For the avoidance of doubt, nothing in this Section U shall: (a) limit the Secured Creditor's right to credit bid its allowed claim pursuant to Section 363(k) of the Bankruptcy Code; (b) affect the Secured Creditor's status as a Qualified Bidder of these Bid Procedures; or (c) restrict the Secured Creditor's participation in the Auction as a bidder on the same terms as any other Qualified Bidder.

**MEMORANDUM OF SALE – SUCCESSFUL BIDDER**

High Bid Realized at Public Sale: ______________________

Buyer's Premium: ______________________________

Real Property Purchase Price:_________________________

Real Property and Non-Debtor Assets Purchase price: ___________

The undersigned has this __ day of October, 2026, agreed to purchase the Real Property and the Non-Debtor Assets (as defined in the annexed Terms and Conditions of Sale) and sold by Kahn Property Owner, LLC, as debtor in possession, and the Opco Operating Entities, pursuant to the Order of the United States Bankruptcy Court for the Eastern District of New York entered on September ___, 2026 authorizing the sale of the Property, for the sum of $__________________________________________ DOLLARS and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale and this Memorandum of Sale.

____________________________________

SUCCESSFUL BIDDER (Signature)

____________________________________

PRINT NAME

____________________________________

ADDRESS

____________________________________

ADDRESS (City, State, Zip)

____________________________________

TELEPHONE NUMBER

____________________________________

EMAIL ADDRESS

Received from ______________________ the sum of $750,000 DOLLARS, as a non-refundable initial deposit for the purchase of the Real Property pursuant to the Terms and Conditions of Sale.

**SUCCESSFUL BIDDER ATTORNEY INFORMATION**

Name ________________________________________

Address ________________________________________

Phone ________________________________________

# MEMORANDUM OF SALE – BACKUP BIDDER

High Bid Realized at Public Sale: _____________________

Buyer's Premium: _____________________________

Real Property Purchase price:_________________________

Real Property and Non-Debtor Assets Purchase price:___________

The undersigned has this __ day of October, 2026, agreed to purchase the Real Property and/or the Non-Debtor Assets (as defined in the annexed Terms and Conditions of Sale) and sold by Kahn Property Owner, LLC, as debtor in possession, and the Opco Operating Entities, pursuant to the Order of the United States Bankruptcy Court for the Eastern District of New York entered on September ___, 2026 authorizing the sale of the Property, for the sum of $_________________________________________ DOLLARS and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale and this Memorandum of Sale.

___________________________________

BACKUP BIDDER (Signature)

___________________________________

PRINT NAME

___________________________________

ADDRESS

___________________________________

ADDRESS (City, State, Zip)

___________________________________

TELEPHONE NUMBER

___________________________________

EMAIL ADDRESS

Received from ______________________ the sum of $$750,000 DOLLARS, as an initial deposit for the purchase of the Real Property pursuant to the Terms and Conditions of Sale.

**BACKUP BIDDER ATTORNEY INFORMATION**

Name ________________________________________

Address ________________________________________

Phone ________________________________________

# EXHIBIT B

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to the Debtor*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.

**Auction Date:** **October 27, 2026 at 10:00 a.m. (EST)**
**Qualifying Deadline:** **October 23, 2026 at 5:00 p.m. (EST)**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAHN PROPERTY OWNER, LLC | : | Case No. 25-72946 |
| | : | |
| Debtor. | : | |

**NOTICE TO CREDITORS AND OTHER PARTIES IN INTEREST OF INTENDED SALE**

**PLEASE TAKE NOTICE** that, by Order dated September ___, 2026 ("Sale Procedures Order") [ECF ___], the United States Bankruptcy Court for the Eastern District of New York, among other things, authorized the public auction sale ("Auction Sale") of: (i) the real property located at 135 West Gate Drive, Huntington, New York 11743, which is comprised of approximately 22 acres of land improved by the historic Oheka Castle & Resort building, including the Debtor's Development Rights (as defined in the bid procedures) (collectively, "Real Property"); (ii) all right, title and interest in and to the assets owned by Oheka Catering, Inc, which entity owns Oheka Catering I, LLC and Oheka Management, LLC (collectively referred to as the "Non-Debtor Assets") (Oheka Catering I, LLC and Oheka Management, LLC are collectively identified as the "Oheka Operating Entities") pursuant to sections 105 and 363 of title 11 of the United States Code ("Bankruptcy Code") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Sale Procedures Order, the Debtor, through his retained auctioneer Concierge Auctions, LLC (the "Auctioneer") and listing broker The Modlin Group, LLC, will conduct the Auction Sale on October 19, 2026 ("Auction Sale") at The Dominick Hotel, 246 Spring Street, New York, NY 10013which shall start at 10:00 a.m., Eastern Prevailing Time. The Auction Sale will be conducted in-person and through a virtual platform. Qualifying Bids will receive the virtual platform information prior to the Auction Sale.

**PLEASE TAKE FURTHER NOTICE** that, to register for the Auction Sale and to bid on the Real Property and Non-Debtor Assets, each prospective bidder must comply with the bid procedures approved by the Court on September ___, 2026 [ECF ] ("Bid Procedures").[1]

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that the following important dates and deadlines apply to the Auction Sale:

| Event or Deadline | Date and Time |
|---|---|
| Bid Registration Deadline | October 23, 2026 at 5:00 p.m. (prevailing Eastern Time) |
| Auction (if necessary) | October 27, 2026 at 10:00 a.m. (prevailing Eastern Time) at the The Dominick Hotel, 246 Spring Street, New York, NY, or such other place as the Auctioneer and Debtor determine. |
| Objection Deadline to Sale | October 28, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Hearing to Approve Sale | October 29, 2026 at 11:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Closing Date | Thirty (30) days after the Bankruptcy Court's entry of an order approving the Sale |

**PLEASE TAKE FURTHER NOTICE** that all interested parties are encouraged to review the Bid Procedures approved by the Court. They are located at *In re Kahn Property Owner*, LLC, ECF ______.

**PLEASE TAKE FURTHER NOTICE,** that, among other things, in order to bid at the Auction Sale:

a. Only Potential Bidders that have submitted acceptable Bid Documents in accordance with the Bid Procedures shall be eligible to submit a written, irrevocable and binding offer to purchase: (i) the Real Property and the Non-Debtor Assets; or (ii) just the Real Property (a "Bid"). To be eligible to participate in the Auction with respect to the Sale of the Oheka Complex, a Potential Bidder must deliver its Bid to Concierge and the Debtor's counsel on or before **October 23, 2026 at 5:00 p.m**. (prevailing Eastern Time) ("Bid Registration Deadline"). Each such Bid must satisfy each of the following Bid requirements (collectively, "Bid Requirements") as shall be determined by the Debtor in its business judgment, in consultation with the Auctioneer:

b. **Good Faith Deposit**: Each Bid must be accompanied by evidence that a good faith deposit of $750,000 ("Good Faith Deposit") has been made or is concurrently being made in immediately available funds to Debtor's counsel's attorney escrow account. For the avoidance of any doubt, the Secured Creditor is not required to submit any Good Faith Deposit to Bid;

c. **The Purchase Agreement**: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, the form of which will be provided to a Potential Bidder upon request, and any other related material documents pursuant to which the Potential Bidder proposes to effectuate the proposed Sale;

d. **Buyer's premium**: Each Bid must agree to pay the buyer's premium in the amount of six (6%) percent of the amount of the Bid ("Buyer's Premium"). Notwithstanding the foregoing, in the event the Secured Creditor chooses to bid cash above and beyond its Credit Bid and the Secured Creditor is the Successful Bidder then only in such event will the Secured Creditor be responsible for paying the Buyer's Premium but only on any cash amount bid over the Secured Creditor's Credit Bid.[2]

e. **Committed Financing**: Each Bid must include proof of available funds in the full Bid amount or proof of committed financing, documented to the Debtor's reasonable satisfaction, that demonstrates the Potential Bidder has received sufficient funding commitments to satisfy the Purchase Price and any other obligations set forth in its Bid.

**PLEASE TAKE FURTHER NOTICE** that a hearing to confirm the results of the Auction Sale is scheduled for **October 29, 2026 at 11:00 a.m.** before the Honorable Louis A. Scarcella, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Courtroom 970, Central Islip, New York 11722, but may be adjourned or rescheduled by the Debtor.

**PLEASE TAKE FURTHER NOTICE** that the successful bidder for the Real Property and/or the Non-Debtor Assets at the Auction Sale must be prepared to close on title to the Real Property and/or the Non-Debtor Assets within thirty (30) days of the entry of an Order confirming the results of the Auction Sale.

[2] A full discussion of the Broker and Auctioneer's compensation can be found in the order approving the employment of Concierge and Modlin [ECF 159].

**PLEASE TAKE FURTHER NOTICE** that any requests for additional information about the Real Property and/or Non-Debtor Assets, including requests for the Terms and Conditions of Sale, may be obtained by contacting counsel to the Debtor, LaMonica Herbst & Maniscalco, LLP, Joseph S. Maniscalco, Esq., at jsm@lhmlawfirm.com or (516) 826-6500 x218, or Concierge Auctions, LLC, Attn: Linsey Bess - phone 646 683 2411; linsey.bess@conciergeauctions.com, or Andrew Cohen - phone 239 233 5550; andrew.cohen@conciergeauctions.com.

Dated: September ___, 2026

**Kahn Property Owner, LLC,**
**as Debtor-in-Possession**
c/o LaMonica Herbst & Maniscalco, LLP
Joseph S. Maniscalco, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Fax: (516) 826-0222
jsm@lhmlawfirm.com

**Concierge Auctions, LLC**
**Auctioneer**
Linsey Bess
Andrew Cohen
228 Park Avenue South, Suite 70835
New York, NY 10003
Telephone: (239) 233-5550
Linsey.bess@conciergeauctions.com
Andrew.cohen@conciergeauctions.com