UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

In re:

Chapter 11
Case No.:
25-72946

Kahn Property Owner, LLC,

Debtor.

---------------------------------------------------------X

John M. Tabone, being duly sworn, deposes and says:

1. I am the Managing Partner of Tabone LLC ("TLLC"), the holder of Proof of Claim No. 15 filed in the amount of $3,000,000. I make this affidavit on personal knowledge and from TLLC's business records, in opposition (the "Opposition") to the Debtor's objection ( the "Objection") to Proof of Claim No. 15.

2. I have more than 35 years of executive experience in capital markets, mergers and acquisitions and special-situation financings. I founded and led a healthcare finance business for a leading medical technology company that originated more than $1 billion in financings, and I led risk-management and capital markets teams that issued more than $2 billion in asset-backed securitizations. I have served in senior executive roles, including Chief Financial Officer and Chief Executive Officer, with multi-geography profit-and-loss responsibility, and have worked extensively with major financial institutions, investment banks, family offices and private equity firms.

3. On January 27, 2024, at a brunch meeting requested by Mr. Melius, he asked me to assist in raising capital for Oheka Castle. The following day he sent me a signed letter thanking me for

"brunch yesterday," enclosing "information for you to do the private placement," and stated that he was not equipped to undertake the process himself and would welcome assistance packaging the transaction. He provided an outline for the 95-unit development stated among other things, "All approvals done" and "Permits filed". On January 26, 2024 Mr. Melius emailed me concerning the Debtor's financial circumstances. He described longstanding foreclosure proceedings and background information on the noteholder and the financing challenges.

4. TLLC initially proposed compensation consisting of (i) a two (2) percent fee on the aggregate financing (debt and/or equity), (ii) two (2) percent equity in Oheka, and (iii) title to one condominium unit. In our discussions, Mr. Melius countered with a five (5) percent fee, with no equity stake in Oheka, and the condominium unit was removed from the proposal at that time.

5. On April 3, 2024, TLLC, the Debtor and Mr. Melius individually executed a Consulting Agreement effective March 26, 2024 (the "Consulting Agreement"), providing for the agreed compensation of five (5) percent.

6. Under the Consulting Agreement, TLLC was retained to raise \$50 million to \$100 million in debt and/or equity to prevent a pending foreclosure and fund development of The Residences at Oheka Castle. The engagement was success-fee only, with no up-front retainer and no billable hours, and the Agreement was non-cancellable for its twelve-month term. It was also non-exclusive, to give the Debtor flexibility to pursue other concurrent alternatives, and it provided for a fee split with any other party originating, brokering or underwriting a transaction. I agreed to those terms, which placed the risk of the engagement on me and TLLC, as an accommodation to help the Debtor avoid the looming foreclosure.

7. On May 19, 2024, the parties executed an Addendum I to the Consulting Agreement. Addendum 1 fixed TLLC's fee at $3 million representing the agreed upon five (5) percent fee on the sixty (60) million executed term sheet value. All other terms and conditions of the Consulting Agreement remained in effect and unchanged.

8. On July 19, 2024, Mr. Melius on behalf of the Debtor executed the Vanbarton term sheet, annexed to TLLC's proof of claim. The financing structure included senior and mezzanine financing tranches in the amount of forty (40) million and twenty (20) million, respectively, with an eighteen (18) month interest reserve allowing for 1 ½ years of no payments. That structural feature provided for a construction head start and lead time for ground breaking (which the Debtor emphatically stated would be in November or, at the latest, December 2024) which would provide the ability to begin marketing the property, generating interest and deposits. Concurrently, a joint venture entity (NEWCO) was to be created in part to use the equity contribution of the 5+ acre sub-parcel carve-out to support a construction loan, which Mr. Melius represented was consistent with the Town of Huntington's HBOD resolution. We were later advised by land-use counsel that was not accurate.

9. On July 22, 2024, the Debtor paid to Vanbarton, by two wires, the required $100,000 good faith deposit, to cover Vanbarton's initial out of pocket expenses.

10. After the execution of the Vanbarton Term Sheet, I continued working to advance the transaction. Vanbarton's counsel began preparing the definitive loan documents and a data room was created for Vanbarton to conduct its due diligence.

11. Beginning in January 2025, I pursued branded residence partners for the project, including Four Seasons, Ritz-Carlton, Mandarin Oriental, Aman and St. Regis. After discussions

with the Residential Group Head of the Four Seasons who oversees global residential business, front-end development, marketing, sales and property design, on January 22, 2025, I sent Mr. Melius the Four Seasons Residential Overview and Brand Premium Analysis.

12. On March 30, 2025, I sent Mr. Melius a Four Seasons non-disclosure agreement, reviewed by his counsel at Jaspan Schlesinger. On April 7, 2025, Mr. Melius signed a further addendum, which extended the term of the Consulting Agreement through September 30, 2025 and confirmed the engagement's scope as to Four Seasons and Vanbarton.

13. I also prepared alternative transaction structures. I repeatedly explained to Mr. Melius the benefits of branding the property as "Four Seasons at Oheka Castle," including the documented sale-price premium the brand commands and the economics of partnering with a recognized luxury operator. He declined to pursue the opportunity because he "did not want any partners."

14. In May of 2025, Mr. Melius informed me he was engaged in discussions with Taconic, the Debtor's foreclosing secured creditor. He mentioned he had a lengthy meeting and stated he was making, progress in working toward an acceptable resolution.

15. Thus, in texts and emails in early May, Mr. Melius repudiated our deal. On May 6, 2025 Mr. Melius wrote:

"We have a deal and then we don't have one... if I do my deal with Taconic you get nothing."

16. The Debtor materially understates TLLC's efforts on its behalf. TLLC performed substantial capital raising and advisory services for the Debtor, including obtaining the requested financing partner, and creatively structuring a deal that provided a highly beneficial financial

arrangement to resolve the Debtor's financial distress. The Debtor dismisses its obligations under its agreement with TLLC and also casually ignores its repudiation of our contract without cause.

17. Simply stated, to date TLLC's substantial efforts on the Debtor's behalf have been totally uncompensated.

18. In light of the express terms of the contract with the Debtor, TLLC is entitled to compensation for its efforts including procuring on the Debtor's behalf financing to save its valuable property from foreclosure.

19. Wherefore, it is respectfully requested that the Debtor's motion to expunge Proof of Claim number 15 of Tabone, LLC be denied in its entirety.

Sworn to this
9th day of November, 2026

Notary or Clerk of the Court

MARK E. COHEN
Notary Public, State of New York
No. 02CO4983573
Qualified in Nassau County
Commission Expires Sep. 21, 20__

John M. Tabone